**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Richard Coleman

    v.                                             Civil No. 09-cv-161-SM

Great Bay Community College, et al.[1]

**REPORT AND RECOMMENDATION**

Before the Court is Richard Coleman's complaint (document no. 1), alleging that defendants have violated his rights under state and federal law. Because Coleman is proceeding pro se and in forma pauperis, the matter is before me for preliminary review to determine whether or not the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915(a)(1); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(1)(B) (authorizing Magistrate Judge to conduct preliminary review of pro se in forma pauperis filings).

---

[1] In addition to Great Bay Community College ("GBCC"), Coleman names, as defendants to this action: the Community College System of New Hampshire ("CCSNH"), CCSNH Chancellor Richard Gustafson, the CCSNH Board of Trustees, GBCC President Will Arvelo, GBCC Vice President of Academic Affairs Diane Chin, and GBCC Social Science Department Chairperson Pat Corbett.

Standard of Review

Under this Court's local rules, when a plaintiff commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review. LR 4.3(d)(1)(B). In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals). The court must accept as true the plaintiff's factual assertions, see Erickson, 551 U.S. at 94, and any inferences reasonably drawn therefrom. See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005). This review ensures that pro se pleadings are given fair and meaningful consideration.

Background

Richard Coleman is a PhD psychologist with thirty years of clinical experience and ten years of college teaching experience. In 2006, Coleman was hired as an adjunct professor of psychology at Great Bay Community College ("GBCC"). Coleman served as an adjunct professor at GBCC through the spring semester of 2008. During his employ at GBCC, Coleman advised the chairperson of the psychology department, Pat Corbett, that he was interested in obtaining full time employment as a psychology professor at GBCC. Corbett told Coleman that she would notify him when a full time position became available, and that she would recommend him for the position. Corbett consistently indicated that she was pleased with Coleman's performance, and he received very positive student evaluations. Coleman asserts that Corbett's assurances that he would be notified of and recommended for such a position motivated him to stay at GBCC in an adjunct capacity, despite the low pay and lack of benefits in that position.

On August 4, 2008, Coleman, concerned that he had not been contacted by anyone at GBCC about preparations for the fall semester, went to the GBCC website. There, he discovered that GBCC was accepting resumes for a full-time associate/assistant

professor of psychology.  The posting was dated July 17, 2008. Corbett had not advised Coleman that this position was available. The listing indicated the position was "open until filled." Coleman confirmed with the GBCC Human Resources Department ("HR") that the position was still available.  On August 6, 2008, Coleman hand-delivered his application to HR.  Coleman asserts that his experience and qualifications exceeded those listed as requirements for the posted position.  Coleman, however, did not receive any response to his application from anyone at GBCC.

Coleman called GBCC President Will Arvelo, who promised to return the call but did not.  Coleman then called GBCC's Vice President for Academic Affairs, Diane Chin, who stated that she was unaware that Coleman had applied for the position and had not seen his application.  Chin told Coleman that someone else had been offered the position and declined it, and that Coleman should ask HR to resubmit his application for the January 2009 semester, when the position would be relisted.  Coleman spoke with HR and was told that, in fact, his application had been forwarded to Chin, and there was no plan to relist the position in January 2009.  The position was not relisted.  It appears that

Coleman's adjunct professor contract was not renewed for the fall 2008 semester, and has not since been renewed at all.

On September 10, 2008, HR wrote to Coleman and advised him that GBCC had decided not to fill the full-time professor position at that time, and to use adjunct professors to meet its teaching needs.  Also on September 10, 2008, Arvelo wrote to Coleman and stated that decisions to renew, or not renew, adjunct contracts were based on the teaching needs in the individual departments within the college.  On September 12, 2008, Coleman filed a grievance with the Director of HR for the Community College System of New Hampshire ("NHCCS").  He never received an acknowledgment of or response to his grievance from that office.

On January 9, 2009, Coleman received a letter from CCSNH Chancellor Richard Gustafson.  Gustafson stated that Coleman's adjunct contract was not renewed initially due to the college's intent to fill the position with a full-time professor.  Once the decision was made to use adjunct professors instead, Gustafson stated, Coleman's adjunct professor contract was not renewed because the GBCC psychology department was changing from a clinical model to a theoretical model, implying that Coleman's skills were no longer the best fit for GBCC's needs.  Coleman

interpreted Gustafson's letter as a coded reference to disagreements Coleman had had with the GBCC administration regarding his imparting of clinical skills in addition to his teaching duties.

While he was an adjunct professor at GBCC, Coleman came to believe that one of his students was at risk of committing suicide.  That student asked Coleman to intervene and help her.  Coleman states that when he attempted to fulfill his professional, ethical, and legal obligation to provide her with assistance, he was stopped by GBCC administration.  Specifically, Coleman claims that Chin directed him not to provide any services to, or have any contact with, the student or her family, and to do no more than refer the student and family to a local mental health center.  Because Coleman was not certain of the quality or sufficiency of the services offered by that facility, however, he felt that he was not fulfilling his duty to assist this student, and was actively violating state and national standards for the professional conduct of psychologists.

During the time he spent as an adjunct professor at GBCC, Coleman came to believe, based on his experience and training as a psychologist, that there were a number of students at GBCC who

had significant psychological disabilities that required supportive services.  Coleman felt that these services were owed to the students by GBCC under applicable federal laws, the school was not providing such services, and that GBCC was therefore violating the law, putting both students and instructors at risk. Coleman expressed these opinions to both Corbett and Chin. Coleman also told them that he felt that by accepting students with these issues and not providing them with supportive services, GBCC was committing fraud upon the funding sources for these students' tuition.

### Claims[2]

Coleman raises the following claims as grounds for relief in this matter:

1. Defendants violated Coleman's due process rights under the Fifth and Fourteenth Amendments of the United States Constitution by failing to renew his adjunct professor contract.

2. Defendants violated Coleman's right to equal protection of the laws under the Fifth and Fourteenth Amendments to the United States Constitution by failing to renew his adjunct professor contract and by failing to give

---

[2]The claims as identified herein will be considered to be the claims raised in the complaint for all purposes.  If Coleman disagrees with the claims as identified, he must do so by properly objecting to this Report and Recommendation or properly moving to amend his complaint.

       him an adequate opportunity to secure a full-time faculty position at GBCC.

3. Defendants improperly retaliated against Coleman for reporting violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12203(a) ("ADA"), by failing to renew his adjunct professor contract and failing to provide him an adequate opportunity to secure a full-time faculty position at GBCC.

4. Defendants improperly retaliated against Coleman for reporting violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1415 ("IDEA") by failing to renew his adjunct professor contract and failing to provide him an adequate opportunity to secure a full-time faculty position at GBCC.

5. Defendants violated Coleman's rights under Part I, Arts. 14 and 35 of the New Hampshire Constitution by denying him due process and equal protection of the laws when they failed to renew his adjunct professor contract and failed to provide him an adequate opportunity to secure a full-time faculty position at GBCC.

6. Corbett committed "fraud in the inducement," in violation of state law, when she falsely represented to Coleman that he would be notified of and recommended for a full-time faculty position at GBCC in order to induce him to sign unfavorable adjunct professor contracts.

7. Defendants violated the New Hampshire Whistleblowers' Protection Act, N.H. Rev. Stat. Ann. § 275-E, _et_ _seq._, by improperly retaliating against Coleman for reporting GBCC violations of the ADA and IDEA to his supervisors.

Discussion

I.  Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983[3]; Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-331 (1986); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).

Coleman's claims allege violations, by state actors, of his federal constitutional Fifth and Fourteenth Amendment rights to due process and equal protection.  Further, Coleman's retaliation

---

[3] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

claims, asserting violations of the ADA and IDEA, also implicate his First Amendment right to engage in protected speech. Accordingly, these claims arise under § 1983.

## II. Due Process Claim

The Fourteenth Amendment protects an individual from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.

> The Due Process clause has both procedural and substantive components.  In its procedural aspect, due process ensures that government, when dealing with private persons, will use fair procedures.  In its substantive aspect, due process safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them.

DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005) (internal citations omitted).

Coleman's due process claim is dependent in the first place on his having a property interest in the renewal of his adjunct professorship, or in having more opportunity than was afforded to him to apply for a full-time professorship.  In Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972), the Supreme Court states:

> [T]he Constitution does not require opportunity for a hearing before the nonrenewal of a nontenured teacher's contract, unless he can show

>           that the decision not to rehire him somehow
>           deprived him of an interest in 'liberty' or that
>           he had a 'property' interest in continued
>           employment, despite the lack of tenure or a formal
>           contract.

Coleman's complaint can be read to allege that he relied on: (1) his supervisors' past approval of his performance; (2) his students' past approval of his performance; and (3) Corbett's statement that she would recommend him for a full-time position when one became available, to create a property interest in renewal of his contract where none otherwise exists.  To show a property interest in an adjunct professor contract renewal, where no such interest is created by the contract itself, there must exist "such rules or mutually explicit understandings that support [a] claim of entitlement to the benefit."  Perry v. Sindermann, 408 U.S. 593, 601 (1972).  The allegations, however, fail to make that showing.  Coleman does not cite to any promise, policy, rule or practice that would indicate that he was assured the renewal of his contract, or that would create a property interest in such a renewal.  See id. at 599 (mere showing that plaintiff was not rehired in one particular job, without more, did not amount to a showing of a loss of liberty).

Because Coleman's adjunct professor contract renewal is protected by the Due Process clause only if he can demonstrate that his property interest rises "to the level of a legitimate claim of entitlement sufficient to trigger due process protections," Acevedo-Feliciano v. Ruiz-Hernandez, 447 F.3d 115, 121 (1st Cir. 2006), and he has not demonstrated such an interest or entitlement, I recommend dismissal of Coleman's procedural due process claim.

To the extent Coleman attempted to assert a substantive due process claim against the defendants, such a claim must allege that the challenged conduct "shocks the contemporary conscience." DePoutot, 424 F.3d at 18 (citing County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).  Coleman's allegations do not meet that standard.  I recommend the dismissal of any such intended claim.

III. Equal Protection Claim

The Equal Protection clause of the Fourteenth Amendment guarantees that "all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Coleman has not alleged that he was treated differently than any person similarly situated to himself, much

less that he received differential treatment on any improper basis.  Accordingly, I recommend that Coleman's equal protection claim be dismissed.

IV.  <u>Retaliation Claims</u>

Coleman alleges that his contract was not renewed, in part, because he complained to his superiors in the GBCC administration that requirements of the ADA and IDEA were not being met, and that GBCC was not only denying its students rights, but was breaking the law.  To state a federal civil rights claim for retaliation, Coleman must allege: (1) that the conduct which led to the alleged retaliation was protected by the exercise of a right guaranteed to him by federal constitution or other federal law, (2) some adverse action at the hands of college officials, and (3) a causal link between the exercise of his protected right and the adverse action.  <u>See</u> <u>Price v. Wall</u>, 428 F. Supp. 2d 52, 55 (D.R.I. 2006) (setting out elements of a retaliation claim).  Coleman alleges that he engaged in the constitutionally and statutorily protected act of criticizing GBCC's treatment of disabled students.  He further alleges that, by not renewing his contract and not giving him an adequate opportunity to apply for a full-time professorship, adverse actions were taken against

him. Coleman has, however, failed to describe or demonstrate any facts which would indicate the existence of any causal link between the adverse acts alleged and his exercise of his right to criticize the GBCC.

Coleman has no free-standing right to have his adjunct professor contract renewed by GBCC, see Roth, 408 U.S. at 569, or to be given verbal notice by his department head of faculty position openings. However, to the extent that his position as an adjunct professor at GBCC may be considered a benefit of the state government, as GBCC is part of the CCSNH and is therefore a state college:

> [E]ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially, his interest in freedom of speech.

Perry, 408 U.S. at 597. To state such a claim, plaintiff must "show that the decision not to renew his contract was, in fact, made in retaliation for his exercise of the constitutional right of free speech." Id. at 598.

As stated above, Coleman states both that adverse action was taken against him in the nonrenewal of his contract and the

impediment to his full-time professorship application, and that he exercised his right to free speech in complaining to his superiors about ADA and IDEA violations he perceived as being committed by GBCC.  Coleman has not, however, done anything to connect the adverse act to his acts of expression.  He has offered no chronology and no statements evidencing defendants' improper intent.  The only thing Coleman points to is the Chancellor's letter advising him that his contract was not renewed because the department was moving to a "theoretical" model from a "clinical" model.  Coleman interprets this information as a coded reference to Coleman's efforts to use his clinical experience with a suicidal student.  Nothing in Coleman's complaint suggests that this was anything more than a strained reading of the letter providing him non-retaliatory reasons for not renewing his contract.  Further, while Coleman alleges he was denied the opportunity to apply for a full-time position, he states that he had full access to the website where the job was listed, that he became aware of and applied for the position while it was still open, and that his application was not considered because GBCC had decided not to fill the position

at all, not because of anything that reflected negatively on Coleman.

I cannot find that Coleman has alleged a sufficient nexus between the exercise of his right to criticize the college and the adverse actions he alleges. I recommend, therefore, that any retaliation claim asserted by Coleman under either the federal constitution or any federal statute should be dismissed.

V.   State Law Claims

Coleman raises a number of claims arising under state law. Where, as here, there is no diversity of the parties, this Court can obtain jurisdiction over plaintiffs' state law claims only by exercising its supplemental or pendent jurisdiction over those state claims that arise out of the same case or controversy as a federal question claim properly before this Court. See 28 U.S.C. § 1367(a) (allowing court to exercise supplemental jurisdiction over state law claims that are "so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy); see also United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Coleman's state law claims arise out of the same facts and circumstances as his asserted federal claims. However, because I have recommended dismissal of

the federal claims, I recommend that this Court decline to exercise its supplemental jurisdiction over the state law claims, and that they be dismissed without prejudice to being refiled in a court of competent jurisdiction.  See LR 4.3(d)(2)(A)(ii).

## Conclusion

Because I find that he has failed to state any claim upon which relief might be granted, I recommend dismissal of this action in its entirety.  Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:     September 29, 2009

cc:       Richard Coleman, pro se


JM:jba